What is the correct contractual interpretation of an employment contract whose language expressly allows for termination either immediately for cause or at any time upon 120 days advance written notice. The trial court erroneously held that because the employment contract also incorporated by reference an earlier tenure policy, that the later contract language expressly allowing 120 days notice was in effect a nullity, as it supposedly could not have established rules of contract construction. And this Court, upon de novo review, should reverse that ruling, which wrongly resulted in an $800,000 judgment. Instead, this Court should find, as a matter of law, that the employment contract permits exactly what it says it permits, a termination at any time upon 120 days written notice. The critical facts are very few and undisputed. But doesn't paragraph 12 use the word tenure? Yes. Paragraph 12 does use the word tenure. It references tenure. And can't you read the tenure policy and the 120-day discharge provision consistently? Yes, you can, Your Honor. You can discharge anyone with 120 days notice unless they have tenure? No, Your Honor. I don't believe that's correct. Why does that paragraph 12 include the word tenure? Because the tenure policy was incorporated by reference and still has a role where terminations are for cause. Under the 1984 tenure policy, a tenured physician such as Dr. Barnett could be terminated either on 90 days notice and reduction in forced cases or for cause, in which case the tenured doctor had certain internal appeal rights. Two years later in 1987, a new employment contract was entered into, which provided expressly for three ways that the employment could be terminated, by the doctor's death, by Cigna immediately for cause again, or by either party at any time upon 120 days notice. The way to read the contract in a way that harmonizes all of its clauses is to provide that Cigna had the option of terminating either for cause, in which case the tenure policy's rights of internal review continue in place, or it had the alternative option, as expressly listed, of terminating at any time upon 120 days notice, in which case it had to pay Dr. Barnett, which it did, the additional monies he was entitled to during the notice period. So the incorporation of the tenure agreement was essentially a functionless act because nobody in their right mind is going to try to terminate for cause when they can do it simply by giving notice. Not necessarily, Your Honor. Why is that? Giving notice costs the employer in this case $40,000 in additional funds. It has the parties agreed that terminating at any time with notice would be a good and acceptable option. Otherwise, if you don't allow that option, it essentially makes that clause a nullity. And under established Arizona law and established rules of contractual interpretation, where a document incorporates another document by reference, you have to try to harmonize the two in a way which makes neither, no provision meaningless. And the way you do that is by allowing what the contract itself expressly allows, either a termination for cause, in which case there are benefits to the tenure policy, or a right to terminate at any time upon 120 days notice. Each provision continues to have effect and operate in its own sphere. Each has its own obligations and procedures. If you terminate for cause, then there are certain appeal rights. If you terminate for notice, you have to pay a lot more money. And the parties agreed that that would be an option. To provide that the tenure policy, which was adopted earlier, somehow trumps the later adopted language in the employment contract, why does it have to trump it? In other words, why can't they coexist? In other words, if a physician does not have tenure, then that physician can be discharged at any time on notice. If the physician has tenure, then he may not. Because the contract that would require, Your Honor, respectfully, a rewriting of the contract. The contract says that the employer, that either party, can terminate the contract at any time upon notice. It doesn't say at any time after tenure has been achieved. That would require that we need a rewriting of the contract. So the incorporation of the tenure policy is effectively meaningless as to physicians who are tenured? No, Your Honor, because the tenure means that if the employer decides to terminate for cause, the tenured doctor has the right to pursue an internal appeal which will allow a higher level review of whether or not cause actually existed. If the employer terminated a non-tenured physician for cause, there would be no internal appeal right. So the tenure clause does still provide a benefit to the tenured doctor. What the parties simply did was subsequently adopt a new contract language which said, in addition to these rights, the employer, either party, has the right to terminate upon 120 days' notice. But tenure also, I mean, I think most people think of tenure as that you're not an at-will employee anymore. I mean, essentially, you're saying a tenured employee is still an at-will employee but they just have a few more rights. Well, by definition, an at-will employee is one who has no rights and the employer can terminate at any time for any reason. At-will plus. Here they have the right of additionally receiving four months' pay. They receive the notice. They would not – a regular at-will employee would not be entitled to that. So there is a definite benefit that they get under the notice provision. They get the notice and the corresponding pay that continues on for the 120-day period. To read the contract the way the district court read it, to say that the 120-day termination clause is ineffective if – because there's a prior tenure provision basically turns the law on its head and says that an earlier incorporated document trumps the express language of the later document that incorporates it. I don't understand trump. In other words, the existence of the tenure doesn't mean that the four-cause or 120-day termination provisions are not there anymore. It's – it's – You say trump. It does because in it – it – what it does is it takes out the language which says that the employer can terminate at any time if it gives the notice. You can't – That's what the tenure would say. If you don't have cause, there's no discharge. No, but what – but if you say the tenure clause precludes the application of the at-anytime 120-day notice clause, then you're making that subsequent clause effectively a nullity. The contract doesn't say anywhere that – But doesn't your interpretation effectively make the tenure clause a nullity? Because look at this case. Here, Cigna could have terminated for cause had it wanted to. Had it wanted to. It – it chose to – to take the 120 days. Right, which was – Why would – why would they go for cause when they've got 120 days? Again, the – the contract gives the employer the option. It can either terminate for cause if it believes that its case is – is sufficiently strong, or it can avoid it. That's if the tenure provision doesn't protect the doctor beyond the 120 days, beyond the – beyond the forecause. In other words, the – the tenure provision for all practical purposes ceases to exist on your interpretation, for practical purposes. No. The tenure provision is not – does not become applicable if the employer chooses an at-anytime upon notice termination. But it doesn't have to choose that. It doesn't have to, but most employers certainly would. Possibly. Because going the other way, they get locked up in court for years, and who knows what they pay. Possibly yes, possibly no, but there's a $40,000 difference to the employer in which it chooses in this particular case. Now, how did it work out here? The plaintiff sued. Even though we picked the 120-day notice provision. Arguing that you misread the contract. But I – that's what the plaintiff argued, but I don't think that that's correct, Your Honor. I mean, there are numerous cases which hold that where there's a contract that provides several different alternative options for termination, the proper way to read that contract is to say that each option is independently available and complies with any of the options. And one of the options isn't a breach of the contract. This Court in the Barnard case said that. The Arizona courts have said the same thing in the Phillips v. Flowing Wells Unified School District case, in the Norman v. Recreation Centers case. There are numerous cases, all which hold that where a contract expressly provides multiple options for termination, those are separate, distinct, and available options. Unless the contract restricts the options. In other words, you're presuming the answer. But the question here is, did the contract, which you acknowledge incorporated the tenure provision, did that restrict the options? That was the question. Right. And, Your Honor, the construction that a subsequent contract modifies previous language. We submit that here the later PSAs at any time with notice provision is simply a partial subsequent modification of the tenure policies provision, which previously allowed terminations on 90 days' notice in reduction force cases. It simply extends that to at any time terminations in exchange for additional notice and pay. The cases are consistent that where you have a later adopted contract that incorporates an earlier contract, you modify the two. And if they are inconsistent in some way, the later contract language supersedes the earlier contract language. We don't think they're inconsistent. We think the tenure policy continues to operate and be effective if a four-cause option is chosen. We think that the at any time with notice provision operates in its own sphere with its own obligations. So those two can be harmonized. But if the at any time with notice provision is somehow inconsistent with the prior termination provision, which we don't think it is, then the case law is clear that the subsequent contract would supersede the prior inconsistent. Let me just be ‑‑ I just want to ask you a question about you make a law of the case argument, and I want to see if you can tell me anything more persuasive on that. In the mem dispo that you're talking about that's a law of the case has to do with compelling arbitration. My understanding would that be before any of the issues were developed, nowhere in the mem dispo is the mention of the word tenure or any of that. How ‑‑ I mean, for it to be a law of the case, the Court would have had to have considered and disposed of that issue. I just don't see it. Your Honor, we think it is a law of the case because the Court had in front of it the PSA, the employment contract, and found that the employment contract provided that either party could terminate the contract on notice, and also recognized that Arizona law under the Norman case provides that where a contract has several options in it to terminate it. Well, did ‑‑ was there any discussion about tenure in any of that? There wasn't, but it didn't need to have the tenure policy in front of it because it had the PSA in front of it, and there was nothing in the tenure language which could change the operative effect of the PSA, because if it was inconsistent with the PSA, then, again, the terms of the PSA would supersede any inconsistent terms from a prior incorporated agreement. So we don't think the tenure policy, even if it was in front of the Court, would have been necessary because the PSA itself controls the law. Now, I have to say that argument doesn't go anywhere for me. I think your other arguments are better, but that's just me. I'm not speaking for anyone else. Okay. Counsel, let me ask you a question, if I may, just to make sure I understand the appellant's position. As I'm hearing it, it seems to be that once the PSA is adopted, that doctors who had done whatever they had to do to get tenure still have tenure, but it's sort of a mini-tenure. In other words, they have tenure, but only to the extent of 120 days. In other words, they have tenure, giving them certain appeals rights, but their employment can be terminated at any time within a 120-day notice without cause. That's correct. They can be terminated without cause. Now, do you have any case precedent in any state or federal jurisdiction where the word tenure has been interpreted to mean something like that? There is not a case directly on that. I'm not saying you necessarily need it, but it would be helpful to your position if there was some authority that the word tenure could mean that. You know, sometimes we think of tenure in different ways. Tenure on a college campus for a full professor is different than tenure for a doctor under the initial policy. But still, your answer on precedent is what? My answer on precedent is there is no case which directly addresses tenure in connection with a subsequently adopted contract that allows termination at any time upon notice. However, tenure is really a function of the party's contractual agreements. And here the parties agreed in the 1987 PSA that there would be a right to terminate at any time in exchange for this additional notice and money. Dr. Barnett didn't have to agree to that employment contract if he didn't want to. But he did, and that was the contract that the parties entered into. So to the extent that it modifies previous tenure rights, that was something the parties agreed to. Whether or not a third-party observer thinks that was a good deal or a good bargain that Dr. Barnett should have agreed to or not is really beside the point because there's no question that that was an agreed-to contract. You can't say that the at-will language only applies before tenure is provided because then you are adding language which is inconsistent with the term at any time. The courts have said any time means exactly that. It doesn't mean before or after some unstated event. That's the Velardi case that the Ninth Circuit has ruled on. You can't add in some implied condition that the parties themselves don't add into that language. Nowhere in Section 13 does it say that the employer can terminate at any time with 121 days' notice, assuming that Dr. Barnett has ---- You only have three minutes left. I don't know if you want to reserve them. Thank you. That nothing in the contract says you can terminate at any time upon 120 days' notice if Dr. Barnett hasn't achieved tenure. Nowhere in Section 13 does it say that, and the Court can't read that in because it's adding something the parties didn't. It would be rewriting the contract, and I will reserve the rest of my time. Good morning. May it please the Court, my name is Jim Jellison. I'm an attorney from Phoenix, Arizona, and I represent Dr. Frank Barnett, who's also in the gallery with me today. To answer Judge Gould's question, I am not aware in addition of any case law that interprets a tenured employee, whether that employee is a professor or a physician or any other type of employee, as somebody who can be terminated without cause. That case simply does not exist, and if this Court were to accept Cigna's position today, this would be the first case that so holds. In addition to that, in addition to that, the interpretation that was offered by Cigna, curiously, was never testified to by any person who was able to interpret this contract. The interpretation that's offered by Cigna in its briefs and its oral argument is all strictly based on Cigna's attorney's interpretation. Not a single witness offered testimony in support of that termination. I would like to read a case about contract interpretation coming from Arizona called the Kintner case. It says, And I would ask this Court if you truly believe in the mid-'80s, late-'80s, that Cigna created a complex tenure policy, distributed that policy to its physicians, incorporated that policy into its physician agreements, promised physicians that they would have job security until age 65, created a complex system of appeals, committees to consider tenure, all with the intention of just hoodwinking those physicians into devoting 30 years of service to Cigna, only to be told at some time that, nah, too bad, so sad, we can terminate you without cause with only 120 days' notice. Well, so that goes to your position that it was ambiguous at best. At best it was ambiguous. I'm not so sure it was ambiguous. Because Cigna obviously has contended that it was unambiguous, and therefore. That's a conclusion you simply could not reach, that it is unambiguous. You could conclude that tenure is viable and interpret tenure and still use the 120-day provision for what it can be used for. However, you could never come to Cigna's conclusion and simply say that it's absolutely and without a doubt subject to conciliation with the tenure position. Cigna's position is contrary to the rights of a tenured physician as it's defined in the contract. Counsel, I have a question for you, but only if the record shows this. Does the record show whether this particular PSA or Physician Service Agreement was a, I'll use the term form agreement for lack of another term, that was entered into with many physicians, including, was it entered into with physicians who did not have tenure? Your Honor, when you look at the way the PSA is constructed itself, there's a lot of indication just from the document that that's exactly what was happening. If you look at the first page of the PSA in Section 4, it only refers to, and by the way, it refers throughout the document to the employer and the physician. It definitely appears to be a form document. It talks about the physician practicing at one or more of the employer's health care facilities without specifically delineating where Dr. Barnett had previously worked. If you look at some of the other sections, for example, Section 6, it refers to the physician as himself or herself or his or her, which would provide us. And then in addition. It seems like a form of paperwork. Does the record also, beyond just looking at the agreement, does the record tell us whether this particular agreement was entered into with other doctors who did not have tenure? Just looking at the document itself, I cannot tell that, Your Honor. I don't know the answer to that question. But does the record say otherwise? That's what Judge Gould asked you. Is there any evidence in the record? I'm trying to find out if there was testimony or other evidence in the record that would answer that. Not on that issue. I don't recall. I did the trial, and I don't recall that that issue was ever developed. Other issues were that I intend to talk about, but that one I don't recall. I see that Dr. Barnett's name was typed in separately when he is specifically identified in the agreement, which would suggest that they've used this agreement with other people before. And I also noted with interest what the reply brief said about the issues that aren't part of this case. I had a question, because there were issues that appeared to be argued in the appellant's opening brief, and then in the reply brief there was a retreatment. So what's your interpretation of that? Actually, that was my interpretation. That's probably why my brief was as long as it was. It seemed like the reply brief cut out a lot of issues. My interpretation is that the appellant did not cite the Taylor standard of interpreting a contract. When we did our brief, they realized that they should have. When they looked at that, they realized that, frankly, there were some fact issues that are supported by the record, the conclusions are supported, there's not clear error, and they frankly had to concede those issues. One of those issues was that the court correctly incorporated the tenure policies into the PSA. I don't think it's a question of there being a later agreement or an earlier one. The fact is this PSA was presented as a complete agreement along with the policies. In other words, the court instructed the jury that the agreement in this case is the PSA's tenure policy. Well, I'm understanding their issue, as they've argued it and after reading the reply brief, is that their issue is that the agreement with Dr. Barnett unambiguously allowed them to fire him without cause. That's what I'm understanding that they're saying, as opposed to when I read the opening brief, they seem to be questioning certain things about the tenure and the tenure agreement being fully incorporated, but then they pulled back from that. And I believe that's what they did. I think that they retreated to almost a single argument, saying, it doesn't matter if he's tenured, we're not going to argue that he is, we're not going to argue that we fired him for no cause, we fired him for no cause, we're going to say that this agreement, when read de novo and without consideration to any evidence or other testimony, has to be interpreted one way and one way only. I don't think that's a correct interpretation under Taylor. I don't think it is a correct interpretation in light of the facts of the case or a correct interpretation when you just look at the agreement itself. And the question was asked to Cigna, what does tenure mean? We don't have to guess what tenure means. Tenure is defined specifically in the policy, and it says this. And by the way, it's the same definition we see in professor cases that deal with tenure. Tenure means this. The assignment of tenure confers on a physician the right to remain with the organization until age 65 unless dismissed for cause as defined in his or her contract of employment. That is what the contract says. If there is any better statement of intent of what this contract means, I'm not sure I have it. I think that says it all. And for Cigna to come in and say that you can faithfully reconcile the no-cause provision and that you can still give meaning to that contractual right, still using no-cause provision, the no-cause provision, I just don't see it. If you are a tenured physician, you have the right until you're 65 to stay unless you are dismissed for causes defined by your contract. At the trial in this case, Dr. Barnett testified that that was his interpretation of the agreement, that he believed that the agreement was for job security provided he was tenured up until the age of 65. Like I said before, no person testified concerning the interpretation that Cigna has talked about today. And in fact, at the trial, and I think that the Court has the sense of this, in terms of giving meaning to the no-cause provision, there was meaning even in the context of this trial, because at the trial, Cigna argued that Dr. Barnett was not a tenured physician. And if Cigna was able to prove to Dr. Barnett, excuse me, to the jury that Dr. Barnett was not a tenured physician, then the 120-day no-cause provision all of a sudden flourishes to life and there's no liability. However, if the predicate is that he is tenured, a predicate which the jury did accept, then the provision that prevents you from terminating with no cause then kicks in. Well, now, the jury had to decide if he was tenured, correct? Yes, ma'am. All right. And I think that the appellant makes an argument about Instruction No. 17, stating that under Instruction 17, that the appellant's position is that the jury was told that the only way that Barnett could be terminated was for cause. From your standpoint, is that what the instruction said, or did the jury have to the instruction? I think the my reading of it was that it said that a party could terminate the agreement with the requisite notice at any time, but that it was more expansive that within that, they had to decide whether the person was tenured and what section applied. What's your reading of that? My reading of Instruction No. 17, and I'm not sure that the instruction on the whole is even deemed controversial by Cigna. I think there may be some parts. But my interpretation of Instruction 17 is that, number one, the judge is telling the jury that the agreement in the case is the physician's agreement and the policies, and you are to read those as a whole. At the end of Instruction 17, Judge Carroll instructs the jury that the ability or the provision dealing with no cause does not serve to modify the policies, but that the jury is to read the contract in a way that gives meaning to all of the provisions, if they're able to do that. I think that, by the way ---- Wait. Was there a way that the jury could have found for Cigna? Yes, there is. And would that be that they found that he wasn't tenured and, therefore, he ---- they could exercise that provision? I do believe that. In fact, I think the judge would have been well within his rights under Arizona law in interpreting the contract after receiving the evidence that came out at trial to simply say to the jury that that's the only issue. If you find that he's tenured, then I've determined as a matter of law that he could only be fired for cause. If you find that he was not tenured, then as a matter of law, I've determined that Cigna could terminate the agreement without cause. I think that was the linchpin. There probably was another factual linchpin in the case, and that is whether or not it was a cause or no cause termination. Cigna made sort of a half-hearted effort to try to argue that their termination was actually for cause, even though they said it was no cause. They were ---- I believe they argued that to the jury, and the jury didn't accept that as well. And the jury ---- and by the way, Cigna made the same argument here, excuse me, at the trial that they made here. They argued to the jury that in order to interpret the contract as a whole, you've got to give us the right to terminate without cause, and the jury didn't buy that either. I think most of all, having come to the conclusion that you're tenured, the policy is so clear that having attained that status, that you have the right to stay until you're 65 unless you are terminated for cause, that's so clearly defined in the agreement that I think the jury felt that they had little choice in coming to the conclusion that they did once they decided that this man is tenured. And so I hope that answers the question on that point. When you look at interpretation, you don't look at it in a vacuum under Arizona law. The Taylor case requires the court to take evidence, requires the court to use evidence that legitimately interprets the contract, and then apply that in assessing what the contract means. In this case, when you look at the tenure agreement, as I've stated it before, it not only includes the statement of tenure as being what it is, what I described, but also the tenure policy describes what Cigna was trying to achieve by offering tenure to its physicians. They say the purposes of physician tenure program are to ensure the development and In other words, Cigna benefits from granting tenure to physicians. The second reason listed in their own policies, the purposes of the physician tenure program are to encourage physicians to join and remain with the plan as a career by providing long-term job security. That is an express provision in the policies. And again, I throw it out. How could Cigna possibly think that interpreting the agreement to mean that tenured physicians can still be terminated for no cause on 120 days' notice ever promote the purpose of providing a career with long-term job security? The interpretation just doesn't even fit into their policy. And it says that if a health plan decides to have a physician tenure program, it must implement the policies that were admitted into evidence in this case. So throughout the document itself, it's clear that the intent of Cigna was to offer true tenure to physicians who met the qualifications for tenure, to provide them the type of job security that they've described in their own policies, and to provide them essentially the job security that we all understand tenure to mean. Dr. Barnett understood it. The physicians who testified for Cigna understood it. The only one that doesn't seem to get it are the people that are making the arguments on behalf of Cigna in this case. Dr. Barnett testified about interpretation, but also the Cigna doctor who was involved with tenure, the tenure committee back in the 80s, also testified not only what he thought about tenure, but how Cigna addresses these tenure issues in terms of its own custom and usage. That was Dr. Pearson, who, when I asked, does tenure mean that you have job security until you're 65 and you can't be fired unless there's cause, he hemmed and hawed. And I remember that because I was there, but eventually his testimony was, I know that. And then I addressed an interesting situation with Dr. Pearson. It was another physician who Cigna did not know was tenured, who they fired under the 120-day notice provision without cause. And that physician went to Dr. Pearson and said, I don't know why you're doing this, I am a tenured physician. Now, what was Dr. Pearson's response to that? He didn't say, oh, you know what, guess what, Dr. Schaefer, we have the option of terminating you with 120 days' notice, so we did everything right. No, Cigna reinstated that doctor once he brought it to their attention that he was a tenured physician who could not be terminated without cause. And when you shed away people's motivations to win or lose the case, the way you deal with specific instances of tenure situations, gone awry, is great evidence of how the organization interprets its own agreement. When I look at every single case that Cigna cited, they all were distinguished by the factor that nobody, none of the employees in those cases was tenured, and in the contracts at issue, there was never even a promise that you can be fired only for cause. That's a huge distinguishing factor in all of those cases. That if you had a contract, and I think the case is the Norman case, if you had a contract that said to the employee, we can fire you for cause, we can fire you without cause, but if you attain the level of recreation supervisor level 8, you can be terminated only for cause, that the way we would interpret it is based on that person's status. If they haven't met the criteria, the company has its options, but once they meet the contractual criteria for protection, then you have to honor the protection that you've given them, and that's all we're arguing about in this case. In terms of basic contract interpretation, appellant's argument truly renders tenure meaningless as it is defined. And I think that's a very important point. We believe that the decision here obviously not only has a significant impact with Dr. Barnett, but has a significant impact on the way tenured employees are going to be dealt with in Arizona, not only in Cigna, but in any other organization that offers tenure, and we ask that this Court observe the rights of those employees who a company or a tenured employee. Thank you. Your Honor, I have a number of points to cover and I'll do it quickly. First, contrary to counsel's representation, Cigna employees Mary Trasker and Dr. Mobley did testify that under the PSA, Cigna could terminate a tenured physician on 120 days' notice at any time. And we do believe that the contract is ambiguous. Just because the parties have presented the Court with different views and have argued their respective views doesn't mean that contract language is ambiguous. There are court cases to that effect. I'm not sure what the Court believes we retreated from from our opening brief. In our opening brief, we conceded that the tenure provision was incorporated by reference. We argued, just as we did in the reply, and as we argued in the opening brief, we have here an oral argument that the -- Yes, it wasn't clear until the reply brief, though, because I think in the appellee's brief, they kind of spent some time on that, and then you came back in your reply brief and basically said you conceded for purposes of appeal that Dr. Barnett was tenured and that the tenure agreement was fully incorporated into the physician PSA. Respectfully, I think that we conceded that in the original brief as well. I was a little confused, too, so that was -- With respect to the Taylor standard, the Taylor case involves whether, when, and how Arizona courts are supposed to introduce and admit parole evidence. There was no parole evidence admitted in this case regarding the construction of the contract, and Taylor is wholly applicable here because Judge Carroll did not base his construction on any extrinsic evidence, but rather his erroneous legal readings of the language contained in the four corners of the documents and his, I think, erroneous reading of the earlier panel opinion. Is it correct, counsel, as the appellee argued, that at trial your client took a position, as one position, was that the doctor did not have tenure? Your Honor, at trial we argued that the doctor did not have tenure. We also argued in the alternative that it didn't matter because under the PSA we could terminate even a tenured doctor at 120 days, upon 120 days. We argued in the alternative. Now, could the provisions of the contract be simply reconciled, but adversely to Cigna, by saying that the 100-day provision would apply to any doctor who was not tenured, but other, you know, for cause is required for one who is? Why would that be reading anything out of the contract? Because, Your Honor, that would be reading a term into the contract which is inconsistent with the words at any time. The courts have said that the words at any time are not reasonably susceptible to an interpretation which adds an implied condition which is nowhere expressed by the parties, and we would specifically direct the court's attention to the Ninth Circuit's earlier Velardi decision, which we cite in our briefs to that, in that regard. Finally, during Instruction 17, as given by the court, did not allow Cigna to argue that it could terminate Dr. Schaefer at any time without cause. In fact, whenever we tried to argue that during our closing, the trial court interrupted and said that's inconsistent with my instruction, we tried to argue that the 120-day provision was still effective, even though 120-day terminations were not included in the original tenure provision, and the court interrupted and said that's inconsistent with my instruction. Well, you could argue that he wasn't tenured, and therefore you could have discharged him on the 120 days, right? And that's ultimately what we had to argue to the jury, because that's all the court let us. Well, okay, but you still could argue under that provision, but you had to show he wasn't tenured. You couldn't say he was tenured and 120 days out. But we tried to say that, but the court refused to allow us to say it. And again, the parties decided to enter into the PSA. Dr. Barnett could have said that. Okay. I think we're like two minutes over. I think we're covering the same ground, so if you just want to sum up in 30 seconds. Your Honor, the only thing that I would say is that if the later PSA's termination provisions couldn't modify the tenure policy, then apparently under the tenure policy, Dr. Barnett would be entitled to be employed until age 65, even if he died earlier. That makes no sense. And it's no different than the at-anytime language. It's a modification of the prior agreement. All right. Thank you both for your argument. This matter will stand submitted at this time. The Court's going to take a short recess of ten minutes, and then we'll resume with the last two cases on calendar. Thank you.
judges: Tg Nelson, Gould, Callahan